**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Mason Christopher Yarborough, Appellant.

Appellate Case No. 2023-000694

———————

Appeal From Florence County
D. Craig Brown, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-003
Heard November 4, 2025 – Filed January 14, 2026

———————

**REVERSED AND REMANDED**

———————

Senior Appellate Defender Kathrine Haggard Hudgins
and Appellate Defender Molly M. Keegan, both of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, and Senior
Assistant Deputy Attorney General Melody Jane Brown,
all of Columbia; and Solicitor Edgar Lewis Clements, III,
of Florence, all for Respondent.

———————

**PER CURIAM:**  Mason Yarborough was indicted and tried for the murder of his father, Chris Yarborough (Father).  It was undisputed that Mason shot Father.  The key issue is whether Mason was entitled to a jury charge on involuntary manslaughter.  We find that Mason was entitled to such an instruction because there was some evidence, albeit disputed evidence, that the shooting was unintentional and occurred during a struggle over a firearm.  Accordingly, we reverse this murder conviction and remand for a new trial.

A defendant is entitled to an involuntary manslaughter instruction when there is any evidence showing an unintentional killing without malice while the defendant was either: (1) engaged in an "unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) . . . acting lawfully with reckless disregard of the safety of others."  *State v. Burriss*, 334 S.C. 256, 264–65, 513 S.E.2d 104, 109 (1999).  As precedent recognizes, one fact pattern where these principles commonly support an involuntary manslaughter charge is where there is evidence of a struggle over a weapon.  *See Tisdale v. State*, 378 S.C. 122, 126, 662 S.E.2d 410, 412 (2008) (finding the "evidence of a struggle for the gun support[ed] submission of a charge of involuntary manslaughter"); *see also Casey v. State*, 305 S.C. 445, 447, 409 S.E.2d 391, 392 (1991) ("Evidence of a struggle between a defendant and a [v]ictim over a weapon is sufficient for submission of an involuntary manslaughter instruction to the jury.").

First, though the State and defense present very different pictures of the fatal encounter, there is no denying the existence of some evidence that Mason did not intentionally shoot Father.  Mason's mother testified that Mason called her immediately after the shooting, that Mason was hysterical, and that he kept saying he did not mean to shoot Father.  Mason told law enforcement the shooting was an accident, that he did not understand how the gun went off, and that he was scared.  A jury may choose not to believe this version of events, but precedent recognizes that it is error to disregard it when evaluating what jury charges to give.  *See State v. Crosby*, 355 S.C. 47, 52, 584 S.E.2d 110, 112 (2003) (holding a defendant was entitled to an involuntary manslaughter instruction when witnesses testified the defendant "told them immediately after the shooting that it had been an accident, and that he hadn't meant to do it").

Second, there is evidence the shooting occurred during a brief struggle over the firearm.  This is disputed as well.  The defense argued that the shooting occurred as Father grabbed or pushed the firearm Mason was holding.  As with the evidence indicating this shooting was not intentional, we cannot discount the evidence of a struggle when evaluating jury charges.  Mother testified that Mason called her

immediately after the shooting and said Father grabbed the gun before "it went off." Both sides presented forensic pathologists as experts, and both experts concluded that Father's hand was very close to the gun when it was fired. Though neither expert could conclusively state whether Father's hand was on the gun, Mason's forensic pathologist opined that Father's hand "had to be in contact with the end of the weapon." Inconsistencies with other evidence do not preclude jury instructions based on this version of events. *See Tisdale*, 378 S.C. at 126, 662 S.E.2d at 412 ("The fact that Victim's wounds may have been inconsistent with [the defendant]'s testimony that the gun fired while in Victim's hand is not overwhelming evidence that [the defendant] intentionally killed Victim."). The evidence specifically indicating a struggle over the gun was sufficient to support an involuntary manslaughter charge because, if believed, it allows the jury to reasonably infer that the shooting was unintentional.

The State argues that involuntary manslaughter is not supported because brandishing a firearm is a felony and thus Mason could not have been acting lawfully under the second definition of involuntary manslaughter. We have carefully considered this argument, but we must respectfully reject it. The trial court charged the jury on the defense of accident. As this court has recognized, "[a] trial court's decision to charge the jury on the defense of accident indicates the trial court found some evidence indicating [the defendant] was acting lawfully." *Wigington v. State*, 413 S.C. 578, 588, 776 S.E.2d 407, 412 (Ct. App. 2015) (noting "[t]he distinction between involuntary manslaughter's second definition and accident is essentially the manner in which the defendant handles the weapon"). There is ample evidence in the record from which a jury could find Mason loved Father but was also afraid of him. There was evidence, albeit disputed evidence, Father had physically abused Mason. Mason told law enforcement Father commonly approached him with a knife. Mason's brother said Father kept guns in several places and often answered the door with a gun behind his back. On the 911 call immediately after the shooting, Mason said Father attacked him, grabbed the gun, and it went off. We accordingly find sufficient evidence to support a reasonable inference that Mason was afraid and lawfully armed when the shooting occurred. *See Burriss*, 334 S.C. at 264–65, 513 S.E.2d at 109 (explaining the pivotal issue in that case, regarding both accident and involuntary manslaughter charges, was whether the appellant was acting lawfully at the time of the killing, and concluding both charges were warranted given the evidence supporting the theory the defendant was armed in self-defense when the gun fired).

We are mindful that our standard of review for jury charges is abuse of discretion and that characterizing a ruling in that way may be read more sharply than is intended. *See State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010) ("An

appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion.").  The term simply indicates "an error of law in the circumstances." *Barrett v. Broad River Power Co.*, 146 S.C. 85, 96, 143 S.E. 650, 654 (1928) (characterizing "abuse of discretion" as an "old unfortunate statement"). While we recognize and appreciate the task the circuit court faced in determining what charges to give in this difficult situation with conflicting evidence, we find Mason was entitled to the involuntary manslaughter instruction because there is disputed evidence in the record that would support such a charge.  *See State v. Gilmore*, 396 S.C. 72, 77, 719 S.E.2d 688, 690–91 (Ct. App. 2011) (finding this court "must reverse and remand for a new trial if the evidence in the record is such that the jury could have found the defendant guilty of the lesser offense").

Because this issue requires reversal, we decline to analyze the remaining issues.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court does not need to review remaining issues when its determination of a prior issue is dispositive).

**REVERSED AND REMANDED.**

**MCDONALD, HEWITT, and TURNER, JJ., concur.**