584 S.E.2d 110

The STATE, Respondent,

v.

Leon CROSBY, Petitioner.

No. 25682.

Supreme Court of South Carolina.

Heard June 12, 2003.

Decided July 21, 2003.

48

Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General W. Rutledge Martin, and Solicitor Warren B. Giese, all of Columbia, for Respondent.

Justice WALLER.

We granted a writ of certiorari to review the Court of Appeals' opinion in *State v. Crosby,* 348 S.C. 387, 559 S.E.2d 352 (Ct.App.2002). We reverse.

## FACTS

Crosby was convicted of voluntary manslaughter in connection with the December 28, 1998 shooting death of Lavaris Dunham (Victim). He asserts the trial court erred in refusing to charge the jury on the law of involuntary manslaughter. We agree.

On the day of the shooting, a number of people were gathered at the apartment of Monica Tucker and Shawanda Knox. Several of the people had spent the previous night at the apartment, including Crosby. Shawanda and her brother, Ryan, left their jobs at Western Sizzlin and went to the apartment where they found several people inside drinking and playing cards. Shawanda asked Monica to make the people leave and, when Monica refused to do so, Shawanda

went across the street and called police. A policeman came and requested Shawanda spend the night elsewhere. During this timeframe, Crosby and his girlfriend Ketura Young were inside the apartment. Crosby became upset when the Victim, who had been drinking, told Crosby that he would "take his girlfriend." Crosby went outside to clear his head.

Believing he had diffused the situation the police officer left. Shawanda and Monica began fighting again, along with Monica's cousin Jenelle Outten, and Shawanda's brother Ryan. As Shawanda was leaving, Monica and Jenelle followed her down the stairs and another fight broke out on the landing. According to the statement Crosby gave to police shortly after the incident, Monica and Jenelle started "double teaming" Shawanda, so he and Ryan tried to break up the fight, and he attempted to pull one of them off of Shawanda. At that point, Victim told him "Don't put your hand on her ... Matter of fact, don't touch her at all." Crosby turned around and then saw Victim "charging at me with his hand behind his back. I went in my pocket and pulled that gun out. **I closed my eyes and pulled the trigger. I didn't even know I pulled the trigger.** I was scared. I seen my life in danger. I didn't know how to react."[1] Victim died of a gunshot wound which severed the carotid artery and transected the spinal cord.

At trial, Shawanda Knox testified that as the group got into a car and fled the scene, Crosby told them it was an accident and he didn't mean to do it. Ryan Knox also testified Crosby had told him he didn't mean to do it. Another witness, Calvin Hill, testified Crosby told him "he didn't mean to do it" and that the gun had slipped.

Crosby testified that as he attempted to break the girls apart, the Victim told him not to put his hand on Jenelle. Crosby told him he didn't want to fight, and Victim pushed him. Crosby attempted to push his girlfriend Ketura back into the apartment, and he glanced back and saw someone charging at him. He saw him "coming at me with his hand behind his back. So I couldn't tell if he had a weapon or not.... When I glanced back, I seen his hands behind his back. So I ain't know what kind it was. That's when I

---

1. This was the statement Crosby gave to police shortly after the shooting.

reached in my pocket and turned around. By the time I turned around, he was already up on me, and I just pow.... As I turned around, before I could turn around, I've done hit that pocket. He came up, I turned around and boom."

During the charge conference, defense counsel waived his request to charge the defense of accident, agreeing "there was no testimony it was an accidental shooting."[2] However, counsel maintained that the testimony that the shooting was not intentional, and that Crosby didn't even know he had pulled the trigger were sufficient to demonstrate that he handled the gun with a reckless disregard for the safety of others, such that he was entitled to a charge on involuntary manslaughter. The trial court disagreed. The Court of Appeals affirmed, finding no evidence which would support a charge of involuntary manslaughter. It found Crosby's actions were intentional and unlawful, such that he was not entitled to the charge. 348 S.C. at 397, 559 S.E.2d at 352.

## ISSUE

Did the Court of Appeals err in ruling there was no evidence to support a charge of involuntary manslaughter?

## DISCUSSION

The law to be charged must be determined from the evidence presented at trial. *State v. Cole*, 338 S.C. 97, 525 S.E.2d 511 (2000). A trial court should refuse to charge a lesser-included offense only where there is no evidence the defendant committed the lesser rather than the greater offense. Involuntary manslaughter is (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without

---

2. The state asserts that, because Crosby waived an instruction on accident, he likewise waived any entitlement to a charge on involuntary manslaughter. We disagree. To satisfy the legal defense of accident, it must be shown that the defendant used due care in the handling of the weapon. *State v. Burriss*, 334 S.C. 256, 513 S.E.2d 104 (1999). A defendant is, however, entitled to a charge on involuntary manslaughter where the evidence shows a reckless disregard of the safety of others. *Id.*

malice, while engaged in a lawful activity with reckless disregard for the safety of others. *State v. Chatman,* 336 S.C. 149, 519 S.E.2d 100 (1999). To constitute involuntary manslaughter, there must be a finding of criminal negligence, statutorily defined as a reckless disregard of the safety of others. *Casey v. State,* 305 S.C. 445, 409 S.E.2d 391 (1991); S.C.Code Ann. § 16–3–60 (1985).

In *State v. Burriss,* 334 S.C. 256, 513 S.E.2d 104 (1999), this Court held that a person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting. In *Burriss,* the defendant was threatened and then attacked by the victim and another male. After being pushed to the ground, the defendant drew a gun and fired two rounds into the ground. One attacker backed away, but urged his accomplice—the victim—to attack the defendant again. At this point, the defendant was on the ground, separated from his gun. When the victim began moving threateningly toward Burriss, he snatched his gun up and it fired. Burriss stated he was scared and his hand was shaking when the gun went off: "It was an accident. I didn't try to shoot nobody." *Burriss,* 334 S.C. at 263, 513 S.E.2d at 108. At one point, however, Burriss also testified that "my hand was on the trigger. The trigger was pulled or whatever."

The Court of Appeals found the present case distinguishable from *Burriss.* It found that "Crosby consistently stated he deliberately retrieved the gun from his pocket and pulled the trigger.... Crosby admitted he intentionally ·shot the gun. Furthermore no evidence was presented that the gun accidentally discharged." 348 S.C. at 395, 559 S.E.2d at 357.

■ The evidence does not support the Court of Appeals' conclusions. We find there is ample evidence from which the jury could have inferred Crosby did not intentionally discharge the weapon. As noted, three witnesses testified that Crosby told them immediately after the shooting that it had been an accident, and that he hadn't meant to do it. Witness Hill testified Crosby told him the gun had slipped. In his trial testimony, Crosby testified that "when I glanced back, I seen his hands behind his back. So I ain't know what kind it was. That's when I reached in my pocket and turned around. By

the time I turned around, he was already up on me, and I just pow.... As I turned around, before I could turn around, I've done hit that pocket. He came up, I turned around and boom." (emphasis supplied). In his statement to police immediately after the shooting, Crosby stated, "I closed my eyes and pulled the trigger. I didn't even know I pulled the trigger. I was scared. I seen my life in danger. I didn't know how to react."

In our view, the only evidence which appears to directly support the Court of Appeals' ruling is Crosby's statement to police in which he stated he closed his eyes and pulled the trigger. However, this ignores the fact that Crosby immediately added that **he didn't even know he had pulled the trigger.** The effect of the Court of Appeals' holding is that if there is any evidence a shooting was intentional, all evidence from which any other inference is may be drawn is negated. This is not the law of this state. *State v. Hill,* 315 S.C. 260, 433 S.E.2d 848 (1993)(charge must be given if there is any evidence to support it; trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence). We hold Crosby was entitled to a jury charge on the law of involuntary manslaughter. The Court of Appeals' opinion is

**REVERSED.**

MOORE, A.C.J., BURNETT, J., and Acting Justices C. VICTOR PYLE, JR., and L. CASEY MANNING, concur.