649 S.E.2d 185

**The STATE, Respondent,**

v.

**George WIGINGTON, Appellant.**

**No. 4281.**

Court of Appeals of South Carolina.

Submitted June 1, 2007.

Decided July 26, 2007.

26

Chief Attorney Joseph L. Savitz, III of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor Harold W. Gowdy, of Spartanburg, for Respondent.

HUFF, J.

Appellant, George Wigington, was convicted of murder and possession of a firearm during the commission of a violent crime in the shooting death of his son, Scott. He appeals, asserting the trial judge erred in refusing to instruct the jury

on (1) self-defense and (2) involuntary manslaughter. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

Appellant and his son, Scott, Scott's two daughters, and Scott's girlfriend all lived together at the time of Scott's death. Jessica, Scott's daughter and appellant's granddaughter, testified to the events leading up to the shooting. On the night of June 26, 2005, Jessica and her father, Scott, engaged in a loud argument, discussing the matter for over an hour. Around 7:00 the next evening, Scott told Jessica he wanted to talk to her about what had happened the previous night. Jessica entered her father's bedroom and the two began talking. Scott was lying in his bed under the covers. During their discussion, appellant came home. At this time, Jessica and Scott were cutting each other off as they discussed the matter, and Jessica "squealed" because her father was not letting her talk.

Appellant entered the bedroom and Jessica was crying, saying her father would not let her talk. Appellant told them they could not both talk at the same time, then moved in front of Scott, who was still in his bed. Appellant and Scott began "hollering" at each other and the argument escalated. Appellant was crouched over Scott when Jessica heard her father yell that appellant had hit him; however, she did not actually see whether any punches were thrown. Scott stood up from the bed and walked into the hallway. Appellant pursued him, and the two stood on each side of a door, yelling. The argument continued as Scott went into the living room and sat in a chair.

Appellant walked into the living room and stood in front of Scott. At this point, Jessica observed appellant strike Scott in his head and shoulders with three or four punches. Scott stood from his chair, but did not hit his father or physically defend himself. He walked to the hall and said to appellant, "if you hit me again I'll kill you." Appellant told Scott to sit down, and Scott complied, returning to the same chair. Appellant sat down as well, the two facing each other as they

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

spoke. Appellant stated, "I thought you were going to hurt her," and Scott replied, "I haven't hurt her, but you have." Appellant then became increasingly upset and enraged. He leaned over a table between them, pointed his finger at Scott, and told Scott to shut up. Appellant then stood and walked out the side door to the carport, while Scott remained seated. As appellant was walking out the door, Scott stated, "you're gonna get your gun, aren't you." Appellant returned, standing where he stood before he left. Jessica was looking into her father's eyes when she heard a gunshot, saw blood coming from his eyes and face, and then saw her father slump over in the chair.

Jessica stated that at no point did her father hit, strike, kick at, or throw anything at appellant. She further testified that after her grandfather came back inside, as she was looking at her father, her father was not swinging or reaching. Right before she heard the gunshot, Scott sat with his hands in his lap, by his side.

Appellant took the stand in his defense. He testified that, on the night of the incident, he arrived home around seven o'clock. As he pulled into his carport, he heard a loud argument. He entered the house and determined the voices were coming from his son's bedroom. As he walked into the bedroom, he saw his granddaughter standing near the bed with tears running down her face as Scott berated her. Appellant told Scott, who was lying in his bed, to calm down and not be so loud. Scott sat up on the side of the bed and kept arguing loudly. Appellant left the bedroom and walked to the den. He was followed by Jessica, and then by Scott, who was still arguing. Appellant told Scott he was being too loud and that he needed to give Jessica a chance to talk. Appellant and Scott sat down, and the arguing continued. Appellant stood, walked over to Scott in his chair, put his hand on Scott's shoulder, and told Scott he needed to calm down and let Jessica talk. Scott immediately jumped up and stood beside his chair. Appellant testified Scott "didn't advance on me," but that Scott stated, "if you put your hands on me again, I'll kill you."

Appellant testified he had been the victim of criminal domestic violence involving his son in 1998, and when his son made that statement, he did not know what would happen

30

next. He feared for his and his grandchildren's safety and wanted to protect them and himself, so he walked out to his car and retrieved a pistol. He looked at the gun to ensure the safety was on and then put it in his pocket before walking back into the room. Scott remarked, "went and got your gun," and appellant stated, "yes, I did." Appellant told Scott it was getting out of control and they were going to have to "de-escalate" things. Appellant had the gun out in his hand, but was not pointing it at Scott, who was sitting in a chair. Scott grabbed appellant's hand with the gun in it. Appellant was concerned Scott was trying to get the gun out of his hand. He did not point the gun directly at Scott until Scott grabbed his hand, and then the gun was "more or less pointing at him." When asked if he pulled the trigger, appellant stated that he evidently did, but that he did not mean to pull it and was surprised because the safety was on the gun. When he saw the bullet had struck Scott, he told another granddaughter to call 911. Appellant denied that he ever hit Scott during the incident. He admitted, though, that Scott never hit him either.

Defense counsel requested the court charge the jury on self-defense. The trial court declined, finding appellant failed to meet two of the elements of self-defense: (1) that the defendant be without fault in bringing on the difficulty and (2) that he had no other probable way to avoid the danger of death or serious bodily injury than to act as he did under the circumstances. Defense counsel then stated, "if you were to charge self-defense, I believe we would be entitled to an instruction on voluntary manslaughter." The trial court responded it would deny the request for an involuntary manslaughter charge based on the reasons stated. After submission of the matter to the jury, appellant was found guilty of murder and possession of a firearm during the commission of a violent crime.[2]

## STANDARD OF REVIEW

 The evidence presented at trial determines the law to be charged. *State v. White*, 361 S.C. 407, 412, 605 S.E.2d

---

2. Although the charges are not contained in the record before us, appellant indicates in his brief that in addition to murder, the trial court instructed the jury on voluntary manslaughter and accident.

540, 542 (2004). If there is any evidence in the record to support self-defense, the issue should be submitted to the jury. *State v. Burkhart*, 350 S.C. 252, 260, 565 S.E.2d 298, 302 (2002). Additionally, if any evidence exists to warrant a jury charge on the lesser-included offense of involuntary manslaughter, then the charge must be given. *State v. Cabrera–Pena*, 361 S.C. 372, 380, 605 S.E.2d 522, 526 (2004).

## LAW/ANALYSIS

### I. Self-defense

Appellant first contends the trial court erred in refusing to instruct the jury on the law of self-defense. We disagree.

If there is any evidence of record from which it can be reasonably inferred that an accused justifiably inflicted a wound in self-defense, then the accused is entitled to a charge on the law of self-defense. *State v. Adkinson*, 280 S.C. 85, 86, 311 S.E.2d 79, 80 (1984), *overruled on other grounds by State v. Stone*, 285 S.C. 386, 330 S.E.2d 286 (1985). A jury charge on self-defense is not required unless it is supported by the evidence. *State v. Bryant*, 336 S.C. 340, 344, 520 S.E.2d 319, 321 (1999). In order to establish self-defense in South Carolina, the following four elements must be present: (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, a reasonably prudent person of ordinary firmness and courage would have entertained the same belief that he was actually in imminent danger and the circumstances were such as would warrant a person of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or loss of his own life; and (4) the defendant had no other probable means of avoiding the danger. *Id.* at 344–45, 520 S.E.2d at 321–22.

In the instant case, appellant fails to meet at least two of the necessary elements of self-defense. First, appellant does not meet the requirement that he be without fault in

bring on the difficulty. " '[O]ne who provokes or initiates an assault cannot escape criminal liability by invoking self defense....' " *Id.* at 345, 520 S.E.2d at 322 (quoting Ferdinand S. Tinio, *Comment Note: Withdrawal, After Provocation of Conflict, As Reviving Right Of Self–Defense,* 55 A.L.R.3d 1000, 1003 (1974)). "Any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense as a justification or excuse for a homicide." *Id.* In the very recent case of *State v. Slater,* 373 S.C. 66, 644 S.E.2d 50 (2007) (Shearouse Adv. Sh. No. 13 at 31), our supreme court determined Slater was not entitled to a self-defense charge because he failed to meet the requirement that he be without fault in bringing on the difficulty. There, the court noted Slater approached an altercation that was already underway with a loaded weapon by his side, and that such activity could be reasonably calculated to bring on the difficulty that arose. *Id.* at 34. Similarly, viewing the evidence from appellant's version of the events, the record in the instant case shows appellant injected himself into a verbal argument between Scott and Scott's daughter, removed himself from the presence of the controversy, and returned with a loaded gun. Thus, appellant's conduct could be reasonably calculated to bring about the difficulty that arose.

Appellant maintains, however, that he had the right to arm himself in his own home after he is threatened, and such cannot constitute evidence he was at fault in bringing on the difficulty. Appellant relies on the following quotation from *State v. Hendrix,* 270 S.C. 653, 244 S.E.2d 503 (1978): "A man arming himself on his own land in a legal manner after he has been threatened is not evidence of his being at fault in bringing on the difficulty." *Id.* at 659, 244 S.E.2d at 506. However, in *Hendrix,* the uncontroverted evidence showed the deceased, who had threatened Hendrix earlier in the day, advanced toward Hendrix on Hendrix's property. After Hendrix pointed his shotgun at the deceased and told him to "back off" three times, the deceased immediately went to his truck and returned with a shotgun to confront Hendrix. It was only after this that Hendrix shot the deceased. *Id.* at 660, 244 S.E.2d at 506. Unlike the situation in *Hendrix,* Scott did not approach appellant and did not confront appellant with a gun

or any other type of weapon. Additionally, while the incident did occur in appellant's home, it was also the home of Scott.

Appellant cites the case of *State v. Grantham*, 224 S.C. 41, 77 S.E.2d 291 (1953) for the proposition that he was under no duty to retreat where he and the victim lived in the same home. In *Grantham*, the appellant, who was partially paralyzed from a stroke, testified that his wife had made repeated threats to kill him, that they had argued the night before, that at the time of the shooting he was seated on a couch, that she advanced upon him with a knife in hand, and that he fired his pistol when she was five or six feet from him. *Id.* at 43, 77 S.E.2d at 292. The court there noted as follows:

> A person need not retreat or seek to escape, even though he can do so without increasing his danger, but *may lawfully resist* even to the extent of taking life if necessary, where, *being without fault in bringing on the difficulty*, he is *assaulted while in his own dwelling house.* . . . However, *the rule is predicated on the absence of aggression or fault on his part* in bringing on the difficulty; the doctrine is for defensive, and not offensive, purposes.

*Id.* at 43–44, 77 S.E.2d at 292 (quoting 40 C.J.S. *Homicide*, § 130, Subsec. c., pp. 1015–1016) (emphasis added). The court there held appellant was not burdened with the duty of retreating, that he was in his home lawfully occupied by him and because he was without fault in bringing on the difficulty, he was not bound to retreat in order to invoke the benefit of the doctrine of self-defense, but could stand his ground and repel the attack with as much force as was reasonably necessary; that under those circumstances of both the deceased and the appellant living in the home, the law imposed no duty upon him to retreat in order to avoid the deceased, but he might stand his ground if he was without fault in bringing on the difficulty. *Id.* at 45–46, 77 S.E.2d at 293.

Here there is no evidence appellant "lawfully resist[ed]" or that he was "assaulted" while in his own dwelling, or that there was any attack from Scott for him to repel. The evidence is uncontroverted that Scott never hit, struck, or threw anything at appellant or presented any weapon during the verbal argument. Although appellant testified Scott jumped out of his chair when appellant touched his shoulder and proceeded to verbally threaten appellant, he admitted Scott did not "advance" on him at that time. Appellant also

34

agreed Scott was seated in his chair when appellant returned with his gun, and that appellant advanced close enough to Scott that Scott could grab his hand. In short, the evidence shows that there were no actions by Scott which appellant had the right to "lawfully resist," that appellant was at "fault in bringing on the difficulty," and that there was no "absence of aggression or fault" on appellant's part. Although appellant maintained Scott threatened to kill him, his words alone were insufficient to constitute legal provocation. While, depending on the circumstances, words accompanied by hostile acts may establish self-defense, Scott's words were never accompanied by any hostile act on his part. *See State v. Santiago,* 370 S.C. 153, 160, 634 S.E.2d 23, 27 (Ct.App.2006) (holding evidence did not support charge of self-defense because it did not support finding appellant was without fault in bringing on difficulty even though appellant maintained deceased verbally berated him, where words were never accompanied by hostile act); *State v. Fuller,* 297 S.C. 440, 444, 377 S.E.2d 328, 331 (1989) (noting law that "words accompanied by hostile acts, may, depending on the circumstances, establish a plea of self-defense"); *State v. Harvey,* 220 S.C. 506, 518, 68 S.E.2d 409 (1951), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991) ("It is well settled in this State that where death is caused by the use of a deadly weapon, words alone, however opprobrious, are not sufficient to constitute a legal provocation.").[3]

Further, we find appellant cannot satisfy the third prong of self-defense. Although appellant testified he feared for his safety, a reasonable, prudent person of ordinary fitness and courage would not have entertained the same belief that he was actually in imminent danger and the circumstances were not such as would warrant a person of ordinary prudence, firmness and courage to strike the fatal blow in order

---

3. On appeal, appellant asserts that he had the right to arm himself after his son stood and threatened him because Scott had physically attacked him in the past. While appellant did testify that he had been the victim in a criminal domestic violence case involving his son, he admitted that the prior altercation occurred in 1998, some six or seven years before this incident, and that the prior incident occurred in another home and he and Scott had thereafter moved into another residence together. This evidence is simply insufficient to establish words accompanied by a hostile act.

to save himself from serious bodily harm or loss of his life. Although there was some evidence that appellant had been the victim of criminal domestic violence at the hands of his son in the past, the record shows this prior incident was at least six years earlier and appellant was comfortable enough with Scott's presence that he continued to live with him thereafter, and even moved into another home with him. Looking at the evidence in the light most favorable to appellant, during the verbal disagreement Scott stood from his seated position, but did not advance on appellant, and told appellant he would kill him if appellant touched him again. As previously noted, Scott did not advance toward the appellant, did not strike at the appellant and did not present any weapon before appellant walked out of the house, retrieved a loaded gun, returned with it and then shot Scott as he sat in a chair. No reasonable person would have feared serious bodily harm or loss of life from Scott's words and actions.

## II. Involuntary manslaughter

Appellant also contends the trial court erred in refusing to charge the jury on involuntary manslaughter. We disagree.

Involuntary manslaughter is defined as (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others. *State v. Crosby,* 355 S.C. 47, 51–52, 584 S.E.2d 110, 112 (2003). "To constitute involuntary manslaughter, there must be a finding of criminal negligence, statutorily defined as a reckless disregard of the safety of others." *Id.* at 52, 584 S.E.2d at 112. Further, "a person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting." *Id.*

Appellant maintains there is evidence of record that he was lawfully armed in self-defense at the time of the fatal shooting and that he did not intentionally discharge the weapon, thereby entitling him to an involuntary manslaughter charge. Defense counsel never argued below that appellant was lawfully armed in self-defense or that there was any evidence of criminal negligence. Counsel requested a charge of involun-

tary manslaughter *only* if the trial court determined a self-defense charge was appropriate. Counsel never stated any specific reason for his entitlement to the charge. Because we have affirmed the trial court's refusal to charge self-defense, appellant would not be entitled to a reversal on the only basis he raised below. *See State v. Freiburger*, 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (finding argument advanced on appeal was not raised and ruled on below and therefore was not preserved for review); *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground."); *State v. Adams*, 354 S.C. 361, 380, 580 S.E.2d 785, 795 (Ct.App.2003) (holding arguments not raised to or ruled upon by the trial court are not preserved for appellate review, and a defendant may not argue one ground below and another on appeal).

Based on the foregoing, Wigington's convictions are

**AFFIRMED.**

ANDERSON and BEATTY, JJ., concur.