681 S.E.2d 17

**The STATE, Respondent,**

v.

**Charles Q. JACKSON, Appellant.**

**No. 4554.**

Court of Appeals of South Carolina.

Heard Feb. 18, 2009.

Decided June 2, 2009.

Revised June 3, 2009.

Rehearing Denied Aug. 25, 2009.

30

Deputy Chief Appellate Defender For Capital Appeals Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for Respondent.

LOCKEMY, J.:

Charles Q. Jackson appeals his conviction and thirty-year sentence for voluntary manslaughter and possession of a weapon during the commission of a crime, arguing the trial court erred in excluding evidence of his knowledge of the decedent's violent history and in refusing to charge the jury on self-defense. We affirm the trial court's exclusion of evidence but reverse its refusal to charge the jury on self-defense.

## FACTS

Jackson lived in a mobile home with his girlfriend and two children. Jackson's home was located adjacent to the mobile home of his sister, Vicki (Sister); her boyfriend, Andrew Felder; and Sister's three young children. Jackson's mother, Dorothy (Mother), lived with Sister and Felder but sometimes stayed the night at Jackson's home. When Mother drank alcohol to the point of intoxication, she became boisterous and unpleasant and, when her children were young, whipped them and beat Jackson with a broom.

On October 27, 2003, Mother drank heavily and began arguing with Felder. After unsuccessfully asking Mother to leave, Sister went to her brother's home and asked him to come and remove Mother from Felder's home. Jackson encountered Mother and Felder in the yard between the homes and invited Mother to his home, where he was cooking dinner for his family. When she refused, Jackson told her his door would be open to her. As Jackson turned back toward his home, Mother began to cry and told him Felder disliked Sister's son and beat Sister. Jackson returned and asked Felder what was going on. Both Felder and Sister denied Mother's statements.

Mother attempted unsuccessfully to re-enter Felder's home. Testimony differed as to what happened next. According to Sister, Mother stumbled as she tried to go up the steps, Felder caught her as she fell, and Mother told him not to

touch her. According to Jackson, Felder blocked the door with his body, argued with Mother, and the two returned to the yard when Jackson intervened on Mother's behalf. Once back in the yard, Mother positioned herself between Jackson and Felder and, still arguing with Felder, shoved him. Felder warned Mother not to touch him again, and Jackson warned Felder not to touch Mother. Shortly thereafter, Felder either shoved or punched Mother, knocking her to the ground.

The record does not indicate which man delivered the first blow, but when Mother fell to the ground, Jackson and Felder began fighting. Felder soon pinned Jackson against Felder's mobile home, pummeling him. According to his testimony, Jackson feared for his life and therefore pulled out his pocketknife and stabbed or cut Felder a total of seventeen times.[1] As Jackson looked on in shock, Felder fell to the ground, bleeding profusely, and died. Jackson ran away and hid, discarding his shirt and the knife, but turned himself in to police two days later.[2]

Jackson was charged with murder and possession of a weapon during a crime. The trial court sustained the State's objections to testimony concerning Felder's boasts about his past crimes and violence. Over Jackson's objections, the trial court refused to charge the jury concerning self-defense. Jackson was convicted of voluntary manslaughter, for which he was sentenced to thirty years' imprisonment, and the weapons charge, for which he was sentenced to a concurrent term of five years' imprisonment. Jackson appealed to this court.

## LAW/ANALYSIS

### I.  Exclusion of Evidence

Jackson argues the trial court erred in excluding his testimony about his personal knowledge of Felder's violent history. We disagree.

---

1. Felder sustained eight stab wounds and nine cuts.

2. Although Jackson identified in which garbage can he threw his shirt and pocketknife, they were not recovered because the garbage was picked up before police checked the can.

■ The admission or exclusion of evidence is a matter within the trial court's sound discretion, and an appellate court may only disturb a ruling admitting or excluding evidence upon a showing of a manifest abuse of discretion accompanied by probable prejudice. *State v. Douglas*, 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006).

■ Generally, the failure to make a proffer of excluded evidence will preclude review on appeal. *State v. Santiago*, 370 S.C. 153, 163, 634 S.E.2d 23, 29 (Ct.App.2006) (holding a proffer of testimony is required to preserve the issue of whether testimony was properly excluded by the trial judge, and an appellate court will not consider error alleged in the exclusion of testimony unless the record on appeal shows fairly what the excluded testimony would have been). Where no proffer of excluded testimony is made, the court is unable to determine whether the appellant was prejudiced by the trial court's refusal to admit the testimony into evidence. *TNS Mills, Inc. v. S.C. Dep't. of Revenue*, 331 S.C. 611, 628, 503 S.E.2d 471, 480 (1998).

■■ We affirm the trial court's decision to exclude evidence of Jackson's knowledge of Felder's violent history because Jackson failed to preserve this issue by proffering the excluded testimony. Excluded testimony must be proffered to the trial court to preserve the issue of its exclusion for appellate review. *See Santiago*, 370 S.C. at 163, 634 S.E.2d at 29. Because Jackson made no attempt to proffer this testimony, the issue of its exclusion is not preserved for our review.[3]

---

3. The threshold issue is whether Jackson attempted to proffer the evidence, rather than whether his attempt succeeded. The rule regarding proffers has been relaxed where the trial court refuses to allow a proffer and the record clearly demonstrates prejudice, or where the appellate court is able to determine from the record what the testimony was intended to show and that prejudice clearly exists. *Jamison v. Ford Motor Co.*, 373 S.C. 248, 260, 644 S.E.2d 755, 761 (Ct.App.2007). In such instances, the appellate court will address the merits if it can be determined what the testimony was intended to show. Rule 103(a)(2), SCRE; *State v. Schmidt*, 288 S.C. 301, 303, 342 S.E.2d 401, 403 (1986). Here, because Jackson failed to proffer his testimony, we are unable to review it to determine what it was intended to show and if it were admissible under *State v. Day*, 341 S.C. 410, 419–20, 535 S.E.2d 431, 436 (2000) ("In the murder prosecution of one pleading self-defense against an attack by the deceased, evidence of other specific instances

## II. Jury Instruction

█ Jackson next argues the trial court erred in refusing to charge the jury on self-defense. We agree.

█ Generally, the trial judge is required to charge only the current and correct law of South Carolina. *Sheppard v. State,* 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004). The evidence presented at trial determines the law to be charged to the jury. *State v. Brown,* 362 S.C. 258, 261–62, 607 S.E.2d 93, 95 (Ct.App.2004). "If there is any evidence of record from which it can be reasonably inferred that an accused justifiably inflicted a wound in self-defense, then the accused is entitled to a charge on the law of self-defense." *State v. Wigington,* 375 S.C. 25, 31, 649 S.E.2d 185, 188 (Ct.App.2007). When any evidence in the record entitles the accused to a jury charge on self-defense, a trial judge's refusal to give the charge is reversible error. *State v. Muller,* 282 S.C. 10, 10, 316 S.E.2d 409, 409 (1984).

█ A self-defense charge is only required when the evidence supports it. *State v. Slater,* 373 S.C. 66, 69, 644 S.E.2d 50, 52 (2007). The State then bears the burden of disproving self-defense beyond a reasonable doubt. *State v. Burkhart,* 350 S.C. 252, 261, 565 S.E.2d 298, 303 (2002). To establish self-defense in South Carolina, four elements must be present: (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining

---

of violence on the part of the deceased are not admissible unless they were directed against the defendant or, if directed against others, were so closely connected at point of time or occasion with the homicide as reasonably to indicate the state of mind of the deceased at the time of the homicide, or to produce reasonable apprehension of great bodily harm."). Furthermore, even if this court could discern from the record and arguments on appeal what the testimony would have shown, Jackson does not argue, nor does the record indicate, clearly extant prejudice. *See* Rule 208(b)(1)(D), SCACR; *Jinks v. Richland County,* 355 S.C. 341, 344 n. 3, 585 S.E.2d 281, 283 n. 3 (2003) (deeming abandoned on appeal an issue not argued in a party's brief); *Helms Realty, Inc. v. Gibson–Wall Co.,* 363 S.C. 334, 339, 611 S.E.2d 485, 487–88 (2005) (placing on Appellant the burden of presenting a sufficient record to allow review).

serious bodily injury; (3) if his defense is based upon his belief of imminent danger, defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger.

*Slater*, 373 S.C. at 69–70, 644 S.E.2d at 52. "Any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense as a justification or excuse for a homicide." *State v. Bryant*, 336 S.C. 340, 345, 520 S.E.2d 319, 322 (1999). An accused who provokes or initiates an assault cannot claim self-defense unless he both withdraws from the conflict and communicates his withdrawal by word or act to his adversary. *Id.*

We reverse the trial court's decision not to instruct the jury on self-defense because some evidence exists to support a self-defense charge and because the facts in this case are similar to those in a South Carolina Supreme Court case in which a self-defense charge was found to be proper. *See State v. Taylor*, 356 S.C. 227, 589 S.E.2d 1 (2003). The trial court did not articulate a specific basis for its decision at the time it ruled. However, oral argument on Jackson's request for a jury charge focused on the first and last elements of self-defense. A jury could have found Jackson satisfied those elements and should have had the opportunity to consider self-defense.

A jury could reasonably have found Jackson was not at fault for the fight because no evidence indicated he acted "in violation of law" and in a manner "reasonably calculated to produce the occasion" until after he became embroiled in the fight. *See id.* The eyewitness testimony supports very different theories of fault. Felder and Mother were already arguing before Jackson attempted to convince Mother to leave the yard with him. Seeing the dangerous level of tension between Mother and Felder, Jackson instructed Felder not to touch Mother. Mother pushed Felder, he shoved her to the ground,

and the men began to fight. No testimony indicated whether Jackson or Felder threw the first punch. Under one theory, Jackson could have assaulted Felder, thereby negating his right to argue self-defense. However, under another equally viable theory, Felder, already angry from his interaction with Mother, could have assaulted Jackson when Jackson stepped between Jackson and Mother. Because a jury could reasonably infer from the evidence that Felder assaulted Jackson, a refusal to charge self-defense on the basis of fault would have been reversible error. *See State v. Muller*, 282 S.C. 10, 10, 316 S.E.2d 409, 409 (1984).

A jury also could have found Jackson had no other probable means of preventing serious bodily injury or death once the fight began. Unless the incident occurred in the accused's home or business or on the curtilage thereof, the accused generally has a duty to retreat. *State v. Wiggins*, 330 S.C. 538, 548 n. 15, 500 S.E.2d 489, 494 n. 15 (1998). This incident occurred on ground between Jackson's and Felder's trailers, with the climax playing out against the outer wall of Felder's trailer. Consequently, Jackson had a duty to retreat if possible. However, testimony indicated at the time Jackson stabbed Felder, Felder was in a superior position to Jackson, had pinned him against a wall, and was continuing to beat him.[4] There was also testimony that Felder himself had the knife at one point during the fight. Therefore, a jury could reasonably infer from the evidence that at the time he made the decision to stab Felder, Jackson had no other means of extricating himself, and a refusal to charge self-defense on the basis of failure to retreat would have been reversible error. *See Muller*, 282 S.C. at 10, 316 S.E.2d at 409.

Furthermore, although the issues on appeal differ, the facts of this case are similar to those in *State v. Taylor*, 356 S.C. 227, 589 S.E.2d 1 (2003). There, Taylor witnessed a violent and escalating argument between a man named Kevin and a woman. *Id.* at 229, 589 S.E.2d at 2. Kevin pushed the woman, and Taylor intervened in an attempt to stop the altercation. *Id.* Witnesses disagreed about who started the fight between Taylor and Kevin. *Id.* At the homeowner's insistence, the two

---

4. Both Jackson and Sister, who testified in the State's case-in-chief, attested to these facts.

men took their fight outside. *Id.* at 230, 589 S.E.2d at 2. At some point during the outdoor portion of the fight, Taylor took a buck knife from his pocket and stabbed Kevin a total of fifteen times. *Id.* Kevin died of a stab wound to the heart. *Id.* The *Taylor* court considered whether the trial court properly charged the jury on both self-defense and mutual combat. *Id.* at 231–34, 589 S.E.2d at 3–5. No exception was taken to the charge on self-defense; rather, the supreme court held the mutual combat charge negated the self-defense charge and created unfair prejudice against Taylor.[5] *Id.* at 235, 589 S.E.2d at 5. The supreme court specifically found the trial court properly charged self-defense. *Id.*

Here, Jackson intervened as peacemaker in an escalating argument between Mother and Felder. After Felder pushed Mother to the ground, Jackson and Felder began to fight, although no evidence indicates which man threw the first punch. Felder eventually pinned Jackson against the wall of a mobile home, preventing his escape. Fearing Felder would not stop hitting him, Jackson took from his pocket the pocket-knife he used for work. Jackson stabbed Felder eight times, killing him.[6]

Although the supreme court's finding concerning the propriety of charging self-defense in *Taylor* is dicta, it is nonetheless instructive in the case at bar. In both cases, the accused stepped into a fight in progress with the intent of stopping the violence but instead became a participant and killed the man he fought. However, in *Taylor*, the accused was not closely related to the woman whose place he took in the fight. In addition, the accused in *Taylor* may have had an opportunity to retreat at the time the men removed their fight from the house to the yard. If the evidence merited a self-defense charge under those circumstances, it should do so here as well.

The dissent notes that the defense of others was not an issue on appeal but proceeds to analyze that doctrine in part.

---

**5.** We do not suggest mutual combat and self-defense are mutually exclusive; rather, in *Taylor,* there was no evidence that the victim was willing to engage in mutual combat with Taylor.

**6.** According to the State's forensic pathologist, Felder suffered seventeen knife wounds. Nine were incise wounds, which are surface cuts. Eight were stab wounds, which penetrated deeper into the body.

We do not turn our disposition on that doctrine. We find only that more than one reasonable inference may be drawn as to whether the accused was the aggressor or provoked the assault and that these inferences must be resolved by the jury, not the court. In our view, the testimony cited by the dissent does not demonstrate that the defendant provoked the assault nor does it establish who the aggressor was in this situation. We also respectfully disagree that we may conclude from this record that it was "apparent" why the defense of others was not asserted on appeal. To do so would amount to speculation on our part and it would be inappropriate to resolve this issue on such speculation. Accordingly, we respectfully disagree with our learned colleague and suggest the matter is more appropriately resolved by the jury.

## CONCLUSION

We find Jackson failed to preserve the trial court's exclusion of evidence for appellate review and therefore affirm that decision. However, we find the trial court erred in refusing to charge the jury on self-defense, and thus we reverse the conviction for voluntary manslaughter. Because we reverse the voluntary manslaughter conviction, we necessarily must reverse the conviction for the weapon charge. Accordingly, the decision of the trial court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

PIEPER, J., concurs and CURETON, A.J., dissents.

CURETON, A.J., dissenting:

Because I believe the only reasonable inference that can be drawn from the evidence is that Jackson was not faultless in "bringing on the difficulty" between him and Felder, he was not entitled to a charge on self-defense. I would therefore affirm.

I note initially that although Jackson's principal argument at trial was that he had a right to defend his mother, he has not asserted on appeal that he was entitled to the self-defense charge because he was defending his mother. It is apparent that the reason he has not done so is due to the fact that, as

admitted at trial, his mother was the person who started the fight with Felder, thus, bringing on the difficulty.

I believe Jackson's status in reference to his right to a self-defense charge is summed up in his own testimony. In response to his counsel's questions, he responded on direct examination as follows:

Q. Did you ever say anything to him about pushing your mother?

A. Yes, sir. I told him not to touch her. Q. Then what happened?

A. Because she was in between us and real close. So, I was like—and I seen the expression on his face like he was ready to hit her. So, I was like don't touch her.

Q. Then what happened?

A. He hit her and we started fighting.

Q. And were y'all all on the ground when you say he hit her?

A. Yes, sir.

* * *

Q. . . . How long after your mother was pushed did you and [Felder] begin to fight?

A. Immediately.

* * *

Q. Did you feel the need to protect your mother? A. Yes, sir, I did.

Q. . . . Before the fight began why didn't you just run away?

A. Because I was scared. I mean, if I would have ran away, I mean, by her being drunk and him being him that she was going to get it. He was going to jump on her.

Additionally, Jackson's sister, Elizabeth Jackson, testified:

Q. Going back, could you tell us because I'm not entirely sure, the pushing between your mother and Andrew Felder, can you tell us again from the start how the physical contact [between Mother and Felder] occurred?

A. My mother pushed [Felder] first, and he replied to her not to touch him again. She pushed him again, and he pushed her, and when he hit her, she hit the ground, and my brother came in, and that's how they started fighting.

An accused who "provokes or initiates an assault" cannot claim self-defense unless he both withdraws from the conflict and communicates his withdrawal by word or act to his adversary. *State v. Bryant*, 336 S.C. 340, 345, 520 S.E.2d 319, 322 (1999). Under the theory of defense of others, one is not guilty of taking the life of an assailant who assaults a friend, relative, or bystander if that friend, relative or bystander would likewise have the right to take the life of the assailant in self-defense. *State v. Long*, 325 S.C. 59, 64, 480 S.E.2d 62, 64 (1997). Moreover, one cannot justify a homicide on the ground of necessity in the defense of another when the other person could not have asserted self-defense by reason of having provoked the encounter. 40 Am.Jur.2d *Homicide*, § 168 (2008).

I would affirm the trial court's decision not to instruct the jury on self-defense because there is no evidence to support a self-defense charge. It is undisputed that Felder and Mother were already arguing before Jackson attempted to convince Mother to leave Felder's house with him. Aware of the level of tension between Mother and Felder, Jackson virtually dared Felder to touch Mother. After Mother pushed Felder, he shoved her to the ground. Thereafter, according to the uncontradicted testimony of Jackson's sister, Jackson "came in" and the fight began immediately. While the majority states that a reasonable inference from the testimony is that Felder assaulted Jackson and thus was the aggressor, I do not think that is a reasonable inference to be drawn from the evidence. I would hold that, unlike *State v. Taylor*, where the defendant testified the decedent "threw the first punch," the only reasonable inference the jury could adduce from the testimony in this case is that Jackson intervened in an ongoing altercation between Mother and Felder to protect his mother who admittedly was at fault in bringing on the difficulty. Because Jackson stepped into the shoes of his mother, he was not entitled to a charge on self-defense.