776 S.E.2d 407

**George WIGINGTON, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**Appellate Case No. 2011–193670.**
**No. 5340.**

Court of Appeals of South Carolina.

Heard Feb. 2, 2015.

Decided Aug. 12, 2015.

580

Appellate Defender, Dayne C. Phillips and Appellate Defender, Laura Ruth Baer, both of Columbia, for petitioner.

Attorney General, Alan McCrory Wilson and Assistant Attorney General, Suzanne Hollifield White, both of Columbia, for respondent.

LOCKEMY, Judge.

In this post-conviction relief (PCR) action, George Wigington (Petitioner) argues the PCR court erred in finding trial counsel was not ineffective for failing to properly argue to the trial court and preserve for appellate review whether he was entitled to an involuntary manslaughter jury charge. We reverse and remand for a new trial.

## FACTS/PROCEDURAL BACKGROUND

In August 2005, Petitioner was indicted by a Spartanburg County grand jury for murder and possession of a weapon during the commission of a violent crime.

At trial, Petitioner testified his son, his son's girlfriend, and his two granddaughters lived with him at the time of the incident. Petitioner testified he got home around seven in the evening on the day of the incident and heard what sounded like a very loud argument. He explained he heard his son's voice. He testified when he got inside the house, he walked into his son's bedroom and saw his granddaughter, Jessica Wigington, standing near the bed crying and his son was berating her. Petitioner stated he told his son to calm down and not be so loud, then left the bedroom and went into the den to watch television. He explained his son and granddaughter came into the den shortly thereafter, and they were still arguing. He testified he again told his son to quiet down and give his granddaughter a chance to talk. He stated they sat down, but the loud arguing continued. Petitioner explained he stood up, walked over to the chair where his son was seated, put his left hand on his son's right shoulder, and told his son to calm down. He further explained his son

immediately stood up and said, "if you put your hands on me again, I'll kill you." He testified he had previously been the victim of criminal domestic violence with his son, and he felt he "didn't know what was going to happen next." Petitioner stated he "felt for [his] safety and [he] felt for [his] grandchildren's safety." He explained he believed he was in danger because his son had just threatened to kill him.

Petitioner testified the situation had escalated out of control and he needed to do something to protect himself and his grandchildren, so he went to his car and got his pistol out of the locked glove box. He stated he made sure the safety was on, and then put the gun in his pocket. He explained he walked back into the den, with his hand in the pocket where the gun was located. Petitioner testified his son asked him if he went to retrieve his gun, and he told his son he had because the situation was getting out of control. He stated he took the gun out of his pocket and was holding it, but was not pointing it at his son. Petitioner explained he walked closer to the chair his son was sitting in, and then his son grabbed his hand holding the gun. He testified the struggle felt like it lasted a long time, but he was sure it was only a few seconds. He stated he did not mean to pull the trigger and was surprised when the gun discharged because he thought the safety was on. He explained his son had not done anything to him to make him want to shoot him.

At the conclusion of trial, the trial court stated it intended to charge the jury on murder, accident, and possession of a weapon during the commission of a violent crime. Trial counsel asked the trial court to charge the jury on voluntary manslaughter, self-defense, and involuntary manslaughter. As to involuntary manslaughter, trial counsel argued "if you were going to charge self-defense, I believe we, we would be entitled to a, an instruction on involuntary manslaughter." The trial court granted trial counsel's request to charge the jury on voluntary manslaughter, but denied trial counsel's request to charge the jury on self-defense and involuntary manslaughter.

The jury convicted Petitioner of murder and possession of a weapon during the commission of a violent crime. The trial court sentenced Petitioner to concurrent sentences of life

imprisonment for murder and five years' imprisonment for possession of a weapon during the commission of a violent crime.

On appeal, this court held Petitioner was not entitled to a jury instruction on self-defense because he was at fault in bringing on the difficulty and he did not reasonably believe he was in actual danger. As to Petitioner's argument that he was lawfully armed in self-defense at the time of the shooting and did not intentionally discharge the weapon, this court held Petitioner's argument was unpreserved because Petitioner did not raise this argument to the trial court. Instead, Petitioner only argued he would be entitled to a charge on involuntary manslaughter if the trial court determined it was appropriate to charge self-defense. Accordingly, this court affirmed Petitioner's convictions. *See State v. Wigington*, 375 S.C. 25, 649 S.E.2d 185 (Ct.App.2007).

Petitioner subsequently filed a PCR application. At the PCR hearing, Jessica testified she was present when Petitioner killed her father. She stated she was looking at her father's head when he was shot in the head. She explained she did not see Petitioner point the gun at her father or pull the trigger. She testified Petitioner and her father did not wrestle over the gun, and her father was not touching Petitioner at the time Petitioner shot him.

Roger Poole, an employee of the Spartanburg County Public Defender's Office, testified he had trial counsel's file from Petitioner's case and had reviewed it.[1] Poole testified trial counsel requested jury charges on self-defense and involuntary manslaughter, and the trial court denied trial counsel's requests. He stated this court affirmed the trial court's denial.

Petitioner also testified at the PCR hearing regarding his version of the facts leading up to the incident. He stated he felt the trial court "took away [his] entire defense." Petitioner explained his defense was the fact that his son was "raging on crack cocaine," his son was screaming at his granddaughter, and his son threatened to kill him, so he went and got his gun for protection. Petitioner testified he did not intentionally

---

1. Petitioner's trial counsel, Michael Bartosh, died before Petitioner's PCR hearing.

point the gun at his son, and during their struggle over the gun, it just went off. Petitioner asserted he did not want trial counsel to "fight on the self-defense claim" because Petitioner "didn't think [he] had a self-defense claim." Petitioner stated he felt his strongest defense was the fact that his son had drugs in his system. Petitioner further testified his defense was accident, asserting his son's death was an "[a]ccidental death." He explained the threatening manner his son was acting was important because it was why he went to get his gun. Petitioner further explained his son was considerably stronger than he was, and he was seventy-four years old at the time of the incident.

The PCR court denied Petitioner's application, finding Petitioner's "testimony to be completely lacking in credibility." The PCR court also found trial counsel "was not ineffective for failing to persuade the [trial] court to adopt self-defense and involuntary manslaughter jury [charges]." Moreover, the PCR court found trial counsel "properly made this request and the trial court denied the request." Further, the PCR court found Petitioner failed to show the trial court and this court's rulings were incorrect and Petitioner failed to establish any error by trial counsel in his presentation of these arguments to the trial court. Petitioner did not file a Rule 59(e), SCRCP, motion asking the PCR court to rule on whether trial counsel was ineffective for failing to preserve the argument that he was lawfully armed at the time of the shooting and the evidence reduced the crime from murder to manslaughter. This court granted Petitioner's petition for certiorari on March 12, 2014.

**STANDARD OF REVIEW**

A PCR applicant has the burden of proving his entitlement to relief by a preponderance of the evidence. *See Thompson v. State*, 340 S.C. 112, 115, 531 S.E.2d 294, 296 (2000); Rule 71.1(e), SCRCP. This court gives great deference to the PCR court's findings of fact and conclusions of law. *McCray v. State*, 317 S.C. 557, 560 n. 2, 455 S.E.2d 686, 688 n. 2 (1995). If matters of credibility are involved, this court gives deference to the PCR court's findings because this court lacks the opportunity to observe the witnesses directly. *Solomon v. State*, 313 S.C. 526, 530, 443 S.E.2d 540, 542 (1994), *overruled on other grounds by State v. Cheeks*, 401 S.C. 322,

737 S.E.2d 480 (2013). If there is any probative evidence to support the findings of the PCR court, those findings must be upheld. *Cherry v. State*, 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989). Likewise, a PCR court's findings should not be upheld if there is no probative evidence to support them. *Holland v. State*, 322 S.C. 111, 113, 470 S.E.2d 378, 379 (1996).

## LAW/ANALYSIS

Petitioner argues the PCR court erred in finding trial counsel was not ineffective for failing to preserve the involuntary manslaughter jury charge issue for appellate review. Petitioner contends he was entitled to an involuntary manslaughter jury charge under the second definition of involuntary manslaughter based on the evidence presented during his trial. Petitioner asserts trial counsel's performance was deficient because he failed to preserve the issue and trial counsel argued the wrong law to the trial court. Further, Petitioner contends trial counsel's deficient performance prejudiced his case because if trial counsel preserved his involuntary manslaughter argument, Petitioner would have been entitled to a new trial and a jury charge on involuntary manslaughter.

## A. Law

To establish a claim of ineffective assistance of counsel, a PCR applicant must prove counsel's performance was deficient, and the deficient performance prejudiced the applicant's case. *Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cherry*, 300 S.C. at 117–18, 386 S.E.2d at 625. To show counsel was deficient, the applicant must establish counsel failed to render reasonably effective assistance under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052; *Cherry*, 300 S.C. at 117, 386 S.E.2d at 625. To show prejudice, the applicant must show that but for counsel's errors, there is a reasonable probability the result of the trial would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Johnson v. State*, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." *Johnson*, 325 S.C. at 186, 480 S.E.2d at 735.

"If there is any evidence to warrant a jury instruction, a trial court must, upon request, give the instruction." *State v. Smith*, 391 S.C. 408, 412, 706 S.E.2d 12, 14 (2011). "[A] trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence" presented at trial. *State v. Hill*, 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993). "The law to be charged to the jury is determined by the evidence presented at trial." *Id.*

> Involuntary manslaughter is: (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others.

*Smith*, 391 S.C. at 414, 706 S.E.2d at 15. For the purposes of an involuntary manslaughter jury charge, " '[a] person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting.' " *State v. Brayboy*, 387 S.C. 174, 180, 691 S.E.2d 482, 485 (Ct.App.2010) (quoting *State v. Crosby*, 355 S.C. 47, 52, 584 S.E.2d 110, 112 (2003)). "[A] self-defense charge and an involuntary manslaughter charge are not mutually exclusive . . . ." *State v. Light*, 378 S.C. 641, 650, 664 S.E.2d 465, 470 (2008).

> There is a difference between being armed in self-defense and acting in self-defense . . . . [In] determining whether one is armed in self-defense, the court is "concerned only with whether the defendant had a right to be armed for purposes of determining whether he was engaged in a lawful act, i.e. was lawfully armed, and not whether he actually acted in self-defense when the shooting occurred."

*Brayboy*, 387 S.C. at 181, 691 S.E.2d at 486 (quoting *Light*, 378 S.C. 641, 664 S.E.2d 465). Our appellate courts have held that "evidence of a struggle over a weapon between a defendant and victim supports submission of an involuntary manslaughter charge" when the evidence shows the defendant was lawfully armed in self-defense at the time of the shooting and the defendant recklessly handled the loaded gun. *Id.* at 180, 691 S.E.2d at 485; *see also State v. Rivera*, 389 S.C. 399, 404–05, 699 S.E.2d 157, 159–60 (2010); *Light*, 378 S.C. at 648–49,

664 S.E.2d at 468–69; *Tisdale v. State*, 378 S.C. 122, 125–26, 662 S.E.2d 410, 412 (2008); *State v. Burriss*, 334 S.C. 256, 265, 513 S.E.2d 104, 109 (1999). "Recklessness is a state of mind in which the actor is aware of his or her conduct, yet consciously disregards a risk which his or her conduct is creating." *State v. Pittman*, 373 S.C. 527, 571, 647 S.E.2d 144, 167 (2008).

## B. Analysis

■ We find Petitioner was entitled to a jury instruction under the second definition of involuntary manslaughter. *See Smith*, 391 S.C. at 414, 706 S.E.2d at 15 (defining involuntary manslaughter under the second definition as "the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others"); *id.* at 412, 706 S.E.2d at 14 ("If there is any evidence to warrant a jury instruction, a trial court must, upon request, give the instruction."). Petitioner's testimony from trial provides some evidence that Petitioner did not intend to kill his son. Petitioner's testimony indicates the gun went off during his struggle with his son, he did not mean to pull the trigger, and his son had not done anything to make Petitioner want to shoot him.

The closer question is whether Petitioner was "engaged in a lawful activity with reckless disregard for the safety of others." *Smith*, 391 S.C. at 414, 706 S.E.2d at 15. Petitioner's testimony establishes his actions amounted to presenting a loaded firearm, a felony.[2] *See* S.C.Code Ann. § 16–23–410 (2003) ("It is [a felony] for a person to present or point at another person a loaded or unloaded firearm."); *In re Spencer R.*, 387 S.C. 517, 522–23, 692 S.E.2d 569, 572 (Ct.App.2010) (defining "the phrase 'to present' a firearm in section 16–23–410 as: to offer to view in a threatening manner, or to show in a threatening manner"); *State v. Cabrera–Pena*, 361 S.C. 372, 381, 605 S.E.2d 522, 526–27 (2004) (concluding the defendant was not entitled to a jury charge under the first definition of involuntary manslaughter because the defendant's use of a firearm to intimidate the victim constituted presenting a firearm, a felony). Petitioner, who was in his home at the time of

---

2. Petitioner was not charged with pointing or presenting a firearm.

the killing, was permitted to carry his gun on his property; it was still a felony for him to present a firearm to another person, unless he had the right to arm himself in self-defense. *See* S.C.Code Ann. § 16–23–20(8) (Supp.2014) (allowing a person to carry a handgun on their person when in their home); S.C.Code Ann. § 16–23–410 (permitting a person to point or present at firearm at another person in self-defense).

Nevertheless, we note the trial court charged the jury on the defense of accident. *See State v. Chatman,* 336 S.C. 149, 153, 519 S.E.2d 100, 102 (1999) ("A homicide will be excusable on the ground of accident when (1) the killing was unintentional, (2) the defendant was acting lawfully, and (3) due care was exercised in the handling of the weapon."). The distinction between involuntary manslaughter's second definition and accident is essentially the manner in which the defendant handles the weapon. *Compare id.* (setting forth the elements of the defense of accident) *with Smith,* 391 S.C. at 414, 706 S.E.2d at 15 (defining involuntary manslaughter under the second definition as "the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others"). The trial court's decision to charge the jury on the defense of accident indicates the trial court found some evidence indicating Petitioner was acting lawfully.

Our appellate courts have held that evidence of a struggle over a gun supports an instruction on involuntary manslaughter when the evidence shows the defendant was lawfully armed in self-defense at the time of the shooting and the defendant recklessly handled the loaded gun. *See Rivera,* 389 S.C. at 404–05, 699 S.E.2d at 159–60; *Light,* 378 S.C. at 648–49, 664 S.E.2d at 468–69; *Tisdale,* 378 S.C. at 125–26, 662 S.E.2d at 412; *Burriss,* 334 S.C. at 265, 513 S.E.2d at 109; *Brayboy,* 387 S.C. at 180–82, 691 S.E.2d at 485–86. Petitioner's testimony indicates Petitioner's gun went off during the struggle over the gun. According to Petitioner, at the time of the shooting, Petitioner's son grabbed his hand that was holding the gun, which Petitioner asserted was not pointed at his son. Petitioner testified he made sure the safety was on when he put the gun in his pocket and he was surprised when it fired because he believed the safety was still on. Petitioner also testified his son's threat and prior act of domestic violence

against him made him afraid for his and his grandchildren's safety. Accordingly, evidence from trial indicates Petitioner may have been armed in self-defense at the time of the shooting and Petitioner may have been recklessly handling the loaded gun at the time of his son's death.

Trial counsel failed to preserve Petitioner's involuntary manslaughter issue for appeal because he never argued the evidence from trial entitled Petitioner to such a charge. *See State v. Wigington*, 375 S.C. 25, 35–36, 649 S.E.2d 185, 190 (2007) (holding Petitioner's involuntary manslaughter argument was not preserved). This was deficient, particularly in light of trial counsel's erroneous argument to the trial court that Petitioner would have been entitled to a jury charge on involuntary manslaughter only if the trial court determined a self-defense charge was appropriate. *See Light*, 378 S.C. at 650, 664 S.E.2d at 470 ("[A] self-defense charge and an involuntary manslaughter charge are not mutually exclusive. . . ."); *Hill*, 315 S.C. at 262, 433 S.E.2d at 849 ("[A] trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence.").

■ We further find Petitioner was prejudiced by trial counsel's improper argument to the trial court regarding Petitioner's entitlement to an involuntary manslaughter jury charge. *See Strickland v. Washington*, 466 U.S. at 688–89, 104 S.Ct. 2052 (holding that to establish a claim of ineffective assistance of counsel, a PCR applicant must prove counsel's performance was deficient, and the deficient performance prejudiced the applicant's case). Had trial counsel properly raised this issue to the trial court, Petitioner would have been entitled to an involuntary manslaughter charge.

Accordingly, we reverse the PCR court's finding that defense counsel was not ineffective for failing to properly argue to the trial court and preserve for appellate review whether Petitioner was entitled to an involuntary manslaughter jury charge.

## CONCLUSION

We reverse the PCR court's dismissal of Petitioner's PCR application and remand to the trial court for a new trial.

**REVERSED AND REMANDED.**

SHORT and McDONALD, JJ., concur.