**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

In the Matter of the Care and Treatment of James Lewis Williford, Appellant.

Appellate Case No. 2021-000733

Appeal From Anderson County
R. Scott Sprouse, Circuit Court Judge

Unpublished Opinion No. 2024-UP-270
Submitted July 19, 2024 – Filed July 24, 2024

**REVERSED AND REMANDED**

Appellate Defender Sarah Elizabeth Shipe, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General Deborah R.J. Shupe, of Columbia, for Respondent.

**PER CURIAM:**  James Lewis Williford appeals his involuntary commitment under the Sexually Violent Predator Act (the SVP Act).[1]  On appeal, Williford argues the trial court erred by admitting testimony regarding the results of his penile plethysmography (PPG).  Specifically, Williford argues the PPG he underwent did not meet the requirements of admissibility for scientific evidence

---

[1] S.C. Code Ann. §§ 44-48-10 to 44-48-180 (2018 & Supp. 2023).

pursuant to Rule 702 of the South Carolina Rules of Evidence because the test lacked (1) standardization; (2) adequate publication and peer review; (3) quality control procedures to ensure reliability; and (4) a calculation of margin of error. We reverse and remand pursuant to Rule 220(b), SCACR.

We hold the PPG is not reliable as required by Rule 702, SCRE; thus, the trial court abused its discretion in admitting the PPG results. *See State v. Jackson*, 384 S.C. 29, 34, 681 S.E.2d 17, 19 (Ct. App. 2009) ("The admission or exclusion of evidence is a matter within the trial court's sound discretion, and an appellate court may only disturb a ruling admitting or excluding evidence upon a showing of a manifest abuse of discretion accompanied by probable prejudice."); *In re Gonzalez*, 409 S.C. 621, 628, 763 S.E.2d 210, 213 (2014) ("An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." (quoting *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000))); Rule 702, SCRE ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."); *State v. Wallace*, 440 S.C. 537, 544, 892 S.E.2d 310, 313 (2023) ("To admit expert testimony under Rule 702, the proponent . . . must demonstrate, and the trial court must find, the existence of three elements: 'the evidence will assist the trier of fact, the expert witness is qualified, and the underlying science is reliable.'" (quoting *State v. Council*, 335 S.C. 1, 20, 515 S.E.2d 508, 518 (1999))); *Watson v. Ford Motor Co.*, 389 S.C. 434, 450, 699 S.E.2d 169, 177 (2010) ("[F]actors that the trial court should consider when determining . . . reliab[ility are]: '(1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures.'" (footnote omitted) (quoting *Council*, 335 S.C. at 19, 515 S.E.2d at 517)); *Matter of Daily*, Op. No. 6061 (S.C. Ct. App. filed June 12, 2024) (Howard Adv. Sh. No. 22 at 19) (holding the trial court abused its discretion in admitting the PPG test results because "the PPG is not reliable, as required by Rule 702"); *see also Matter of Bilton*, 432 S.C. 157, 162, 851 S.E.2d 442, 444 (Ct. App. 2020) ("The [PPG] test is controversial and has been criticized for a lack of standardization and for being subject to manipulation."); *id.* at 162-63, 851 S.E.2d at 444 ("[W]ith limited exceptions . . . courts have 'uniformly' declared that PPG test results are 'inadmissible as evidence because there are no accepted standards for this test in the scientific community.'" (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1266 (9th Cir. 2000))).

Further, we cannot say that the error of admitting the results of the PPG test could not have reasonably affected the result of the bench trial. *See Bilton*, 432 S.C. at 167, 851 S.E.2d at 447 ("As with any improper evidence, the next step is to determine whether the erroneous admission qualifies as a harmless error."); *id.* ("We do not weigh the evidence when determining this. Instead, we ask 'whether beyond a reasonable doubt the trial error did not contribute to the guilty verdict.'" (quoting *State v. Tapp*, 398 S.C. 376, 389-90, 728 S.E.2d 468, 475 (2012))); *id.* at 168, 851 S.E.2d at 447 (finding prejudicial error in the admission of PPG test results). During the 2021 trial, the trial court heard competing testimony from the two expert witnesses who had evaluated Williford pursuant to the SVP Act. The State's expert and sole witness, Dr. Emily Gottfried, diagnosed Williford with two personality disorders and a mental abnormality and opined he was likely to reoffend. Williford's expert, Dr. Rozanna Tross, found no personality disorders or mental abnormalities. Although Dr. Gottfried stated the PPG was "one data point in [the] protocol," she described the PPG as "a physiological objective measure of male sexual arousal," and explained "that sexual arousals due to nonconsensual or abusive stimuli is a strong predictor of future sexual recidivism." She later specified that for Williford, most of the scenarios of the PPG that she attributed "clinically significant arousal to were to coercion or sexual violence." Dr. Gottfried further underscored the importance of the PPG in her evaluations when Williford's counsel asked Dr. Gottfried whether she could do an evaluation if she were told she could not use the PPG. Dr. Gottfried responded, "No. I mean I developed the protocol as the director of the clinic and lab, so I wouldn't take it out." She further explained that if she was not allowed to use the PPG as testimony in court, "[her] plan, if that were to happen, is to still administer a PPG and still use that as a data point." Additional testimony revealed Williford had a disciplinary infraction for slapping another inmate in 2004 but no subsequent infractions in the intervening years. When Williford's counsel posed the question that "there [was] nothing that has occurred [in the last seventeen years] that would indicate he hasn't changed; is that correct," Dr. Gottfried further emphasized use of the PPG in her considerations. Although she allowed that some of Williford's aggressiveness and fighting "ha[d] remitted," she explained that otherwise there was not any change in the data; Williford had not undergone any treatment, he did not believe he needed treatment, he showed current arousal to coercive sexual acts, and still demonstrated the same personality characteristics he demonstrated at the time of his offenses. Based on Dr. Gottfried's reliance on the PPG and her testimony emphasizing the importance of the PPG, we cannot say beyond a reasonable doubt that the admission of the results of the PPG did not contribute to the guilty verdict.

**REVERSED AND REMANDED.**[2]

**WILLIAMS, C.J., and KONDUROS and TURNER, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.